UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-57-DCR
CIVIL NO. 07-165-DCR

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS:                                    RECOMMENDED DISPOSITION

JAMES D. HARPER, JR.                                                         DEFENDANT

\* \* \* \* \*

The Court considers a § 2255 motion filed by *pro se* Defendant James D. Harper Jr., on referral from the District Judge.[1]  *See* DE #72.  Harper pled guilty to a one count Information[2] alleging conspiracy to distribute 500+ grams of a mixture or substance containing meth. *See* DE #38 (Judgment).  He received a 210 month sentence and appealed, but the Sixth Circuit dismissed the action based on a waiver provision in Harper's plea agreement. *See United States v. Harper*, No. 05-5450 (6th Cir. Jan. 26, 2007).  The United States asserts by response that the waiver provision also bars the current § 2255 motion. *See* DE #74.  For the reasons that follow, the Court recommends that the District Court DENY Harper's application for § 2255 relief.

---

[1] Harper also has filed a separate motion asking that the Court grant his § 2255 petition. *See* DE #77.

[2] Harper waived indictment. *See* DE #18.

1

**I. Background**

Between March 2002 and December 2003, Harper participated in a meth distribution conspiracy involving Bill Graves, Sr., Bill Graves, Jr., Stevie Graves (brother of Bill Graves, Sr.), and other unidentified individuals. *See* DE #19 ¶ 3 (hereinafter "Plea Agreement"). Harper began by acquiring meth directly from Bill Graves, Sr. Harper estimated that he received two-plus ounces every two to three days. Because Graves, Sr. went to federal prison for a supervised release violation, Harper began purchasing meth from Bill Graves, Jr. in October 2002. The transactions continued essentially unchanged. The purchase price for two ounces of meth was $3,400. After resale, Harper profited about $500 per ounce. *See* DE # 42 ¶ 10 (Presentence Investigation Report, hereinafter "PSR").

In January 2003, Harper resumed purchasing meth from Bill Graves, Sr. Initially, Harper continued to purchase about two ounces every two or three days. Graves, Sr. then began "fronting" Harper seven to eight ounces. The practice continued until September 2003. Eventually, Harper owed Graves, Sr. a substantial debt. Harper thus sought to end his trafficking involvement and contacted law enforcement. *See id.* ¶ 11. In July and October 2003, Harper spoke to DEA investigators about the drug trafficking conspiracy and provided written "ledgers" documenting the illicit transactions. *See id.* ¶¶ 7-8, 11-12; *see also* Plea Agreement ¶ 3. The ledger entries began in February 2003 and ended in June 2003. *See* PSR ¶ 12.

Police actually arrested Harper on December 2, 2003. After *Miranda* warnings, Harper provided a confession establishing his participation in a conspiracy to distribute 500+ grams of a mixture or substance containing meth. *See* PSR ¶¶ 21-22; *see also* Plea Agreement ¶ 3. Harper entered a plea agreement in August 2004 and pled guilty to a single count based on the meth

conspiracy. *See id.* The information alleged:

> On or about a date in March 2002, the exact day unknown, and continuing through on or about December 2, 2003, in Pulaski and Rockcastle Counties, in the Eastern District of Kentucky, and elsewhere, James D. Harper, Jr. did conspire with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

*See* DE #16.

Harper's plea agreement outlined the essential offense elements; the supporting facts; the minimum and maximum statutory penalties; and the recommended (*i.e.*, non-binding) Guideline calculations. *See* Plea Agreement ¶¶ 2-5. Harper expressly admitted to the facts contained in the plea agreement, acknowledged that the United States could prove the facts beyond a reasonable doubt, and acknowledged that the facts established the essential elements. *See* id. ¶ 3. The plea agreement explained that the statutory penalty was "not less than 10 years, not more than life." *See id.* ¶ 5.

Harper promised that he would "cooperate fully with the United States in the investigation and prosecution of the matters in the Indictment [sic] and all related matters." *See id.* ¶ 9. He also waived the "right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence." *See id.* ¶ 8. Based on Defendant's acceptance of responsibility, the United States pledged that it would recommend a three level decrease under U.S.S.G. § 3E1.1. *See id.* ¶ 5(e).

In the final provisions, Harper acknowledged that the plea agreement was the "complete and only Plea Agreement" between the parties and he confirmed that no other "promises" had been made by the United States. *See id.* ¶ 11. Harper further acknowledged that defense counsel had "fully

explained" the agreement, that he understood its terms, and that he "voluntarily" accepted the agreement. *See id*. ¶ 13. Harper and his defense counsel both executed the document.

District Judge Karen Caldwell conducted Harper's plea hearing. Judge Caldwell placed Harper under oath and established his competency. *See* DE #49 at 3-4, 15 (hereinafter "Rearraignment"). Defendant confirmed that he had received a copy of the information, reviewed it with counsel, and understood the charge. *See id*. at 5. The United States repeated the count, stating that Harper "conspired with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing methamphetamine." *See id*. Harper again affirmed that he understood the charge and intended to plead guilty. *See id*. at 5-6.

The District Judge reviewed Harper's plea agreement and verified his signature. *See id*. at 8. Harper acknowledged that he had reviewed the document with counsel and understood all of its terms and conditions. *See id*. Defendant further affirmed that he had not been threatened, forced, or coerced into signing the document or pleading guilty. *See id*. at 9. In addition, he confirmed that he had received no unwritten promises. *See id*. Harper advised Judge Caldwell that he was "before the Court to plead guilty" because he was in fact "guilty." *See id*.

The District Judge next discussed the factual basis contained in the plea agreement and confirmed that Harper had reviewed it "carefully" with counsel. *See id*. at 9-10. Harper agreed that the facts were "true" and accurately reflected his conduct. *See id*. at 10. He also acknowledged that he had "adopted" the factual basis as his "own statement" by signing the plea agreement. *See id*.

Again, the District Court advised Harper that the statutory punishment was "not less than ten years, not more than life." Harper confirmed that he understood the possible penalties. *See id*. at 10-11. The District Judge advised Harper that she did not know at rearraignment what his sentence

4

would be, but warned Harper that he could not withdraw his plea if the ultimate sentence exceeded his expectation. Harper acknowledged that he understood. *See id.* at 11-12.

Next, Judge Caldwell addressed the waiver provision. The District Judge specifically asked Defendant whether he had reviewed the waiver provision "carefully" with counsel. *See id.* at 12. Harper confirmed that he and counsel had discussed the waiver. He also acknowledged that he understood the provision. *See id.* Finally, the District Judge reviewed Harper's obligation to cooperate with the United States. Harper advised the Court that he comprehended the commitment. *See id.* at 12-13.

Harper pled guilty following the Rule 11 colloquy. *See id.* at 15. The Court accepted his plea, finding it was "made knowingly and voluntarily" and "supported by an independent basis in fact." *See id.*

Harper remained in detention pending sentencing. Based on recorded jail phone calls, the United States subsequently alleged that Harper was conducting drug transactions from the detention facility through his girlfriend. In addition, the recorded phone conversations showed that Harper's girlfriend was attempting to contact Judge Caldwell's family to influence Defendant's detention status. As a result of Harper's alleged drug activity, the United States objected to awarding acceptance of responsibility credit under § 3E1.1. *See* DE #24. Judge Caldwell also recused herself because of the attempted improper contact. *See* DE #29. District Judge Danny Reeves thus received the case and conducted Harper's sentencing hearing. *See id.*

At sentencing, the United States argued against § 3E1.1 credit and offered testimony about the recorded phone conversations by DEA Agent Barry Adams. Adams played pertinent excerpts from the recorded conversations. Based on the persons and activities discussed, Adams suspected

5

that the drug trafficking involved marijuana and methamphetamine, although marijuana was the only substance Harper specifically mentioned. *See* DE #59 at 25-26 (hereinafter "Sentencing"). Harper actually testified that he was trafficking exclusively in small amounts of marijuana because he was "broke." *See id*. at 39-40. After hearing all the evidence, the Court determined – by clear and convincing evidence – that Harper's illicit post-plea drug activities included both marijuana and meth. *See id*. at 51-52; *see also* DE #37 at 4 (hereinafter "Sentencing Memorandum"). Furthermore, the Court rejected Harper's contention that the drug trafficking only included "small amounts." *See id*. Because of Harper's intervening drug trafficking, the District Court found that Harper should not receive acceptance of responsibility credit under § 3E1.1. *See* Sentencing at 52-53; *see also* Sentencing Memorandum at 4-5.

Absent credit, Harper's Guideline range was 151 to 188 months. *See* Sentencing at 53; *see also* Sentencing Memorandum at 6. Considering the factors in 18 U.S.C. § 3553(a) and Harper's improper attempt to contact Judge Caldwell's family, the District Court found that a sentence exceeding the Guideline range was necessary to "promote respect for the law."[3] *See* Sentencing at 57; *see also* Sentencing Memorandum at 7. The Court thus increased Harper's total offense level from 34 to 35 (with a criminal history category I). *See* Sentencing at 59-60. The resulting new Guideline range was 168 to 210 months. Finding that a sentence "at the upper limit . . . would serve the purposes outlined in 18 U.S.C. § 3553(a)," the Court imposed a 210 month prison term. *See* Sentencing Memorandum at 7; *see also* Sentencing at 60.

---

[3] If Harper had obtained release by influencing Judge Caldwell, the District Court found that Defendant then intended to flee. *See* Sentencing Memorandum at 4-5; *see also* Sentencing at 59.

6

Harper appealed, but the Sixth Circuit enforced the waiver provision in the plea agreement. *See United States v. Harper*, No. 05-5450 (6th Cir. Jan. 26, 2007). This § 2255 motion followed. The Court summarizes Harper's § 2255 motion and supporting memo to allege the following claims.

> 1) Counsel provided ineffective assistance because counsel failed to argue whether the evidence established the drug quantity and drug type alleged in the information; failed to argue whether the evidence established a conspiracy; failed to investigate whether the police offered Harper immunity; and failed to argue that his sentence violated due process.
>
> 2) Harper unknowingly and involuntarily pled guilty because counsel improperly "assured" him that he would receive a ten year sentence or less and "coerced him into believing that he was guilty of conspiracy."
>
> 3) The information was defective because the evidence did not establish a conspiracy to distribute methamphetamine.
>
> 4) Harper's confession was inadmissible because he was under the influence of drugs and because the police improperly "induced" his confession by promising immunity.
>
> 5) Harper's conviction is invalid based on "selective prosecution."
>
> 6-8) Harper's sentence was unreasonable, violated 18 U.S.C. § 3553, and should have complied with the Guidelines.
>
> 9) The District Court improperly considered post-plea conduct as "relevant conduct" for Guideline purposes.
>
> 10) Harper did not receive proper notice before the District Court sentenced him above the Guideline range.

The United States asks that the Court dismiss Harper's § 2255 motion based on the waiver provision. Harper has responded and contends that the waiver is unenforceable. *See* DE #76 (hereinafter "Reply").

**II. Analysis**

Harper's plea agreement provides: "Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence." *See* Plea Agreement ¶ 8. Because the provision contains no conditions or qualifications, the waiver theoretically applies to every claim alleged by Harper. The United States thus asserts, by its motion to dismiss, that the waiver totally bars relief.

According to the Sixth Circuit, an "informed and voluntary" collateral-attack waiver is enforceable. *See In re Acosta*, 480 F. 3d. 421, 422 (6th Cir. 2007); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001)(explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights). The Court finds that the record in this case establishes an informed and voluntary waiver.

Harper acknowledged by executing the plea agreement that he had reviewed the document with counsel and understood its terms. *See* Plea Agreement ¶ 13. At the plea hearing, Harper again confirmed to the District Judge (this time under oath) that he had reviewed the agreement with counsel and fully grasped its provisions. *See* Rearraignment at 8. In addition, the District Judge personally addressed Harper and specifically discussed the collateral-attack waiver, per Rule 11(b)(1)(N). *See id*. at 12. Harper affirmatively responded that he comprehended the provision. *See id*.

The record shows that Harper's responses were voluntary and under oath, and the District Court established Movant's competency at the hearing. *See id*. at 3-4, 15. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in

subsequent collateral proceedings. *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977). Considering the representations by Harper in the plea agreement and during the plea hearing, and the significance of his sworn statements, the Court can only conclude that, as the Sixth Circuit also found, he made an "informed and voluntary" waiver.[4] *See In re Acosta*, 480 F.3d. at 422.

Harper argues that the waiver provision is unenforceable because the United States violated the plea agreement. *See* Reply at 2. The Sixth Circuit recognizes that a "material breach of a plea agreement" by the United States "renders" a waiver provision contained in the agreement "ineffective." *See United States v. Ramsey*, 177 F.App'x 464, 465 (6th Cir. 2006)(citing *United States v. Swanberg*, 370 F.3d 622, 626-29 (6th Cir. 2004)). In evaluating whether the United States breached the plea agreement, the Court considers "what was reasonably understood by the defendant" when he accepted the bargain. *See United States v. Carr*, 170 F.3d 572, 575 (6th Cir. 1999). Traditional contract law principles generally govern plea agreement interpretation and enforcement. *See United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006).

In relevant part, the parties here agreed to "recommend" credit for "acceptance of responsibility." *See* Plea Agreement ¶ 5. Based on the application notes for § 3E1.1, acceptance of responsibility involves, among other factors, "voluntary termination or withdrawal from criminal conduct or associations." *See* U.S.S.G. § 3E1.1 n. 1(b). The record plainly establishes noncompliance with the values of note 1(b). During Harper's presentence detention, recorded phone conversations showed that Harper was trafficking in meth and marijuana from jail through his girlfriend. The United States thus opposed credit under § 3E1.1.

---

[4] The Sixth Circuit, evaluating the same record against like arguments, enforced the appellate waiver. *See United States v. Harper*, No. 05-5450, at 2 (6th Cir. Jan. 26, 2007).

9

In the Court's view, Harper received what was "reasonably due." *See Santobellow v. New York*, 92 S.Ct. 495, 499 (1971). If Harper did not actually accept responsibility, he could not have "reasonably understood" or expected that the United States would still honor (or be bound to honor) its corresponding pledge to recommend credit under that provision. *See Carr*, 170 F.3d at 575. Because Harper did not accept responsibility as contemplated by the Guidelines, the Court finds that the United States did not breach the plea agreement by objecting to credit. *See United States v. Hambrick*, 235 F.App'x 991, 991 (5th Cir. 2007).

Next, Harper insists that counsel "threatened" and "guaranteed" that Defendant would receive life imprisonment if he did not "acquiesce" and plead guilty. *See* Reply at 3, 7. The record clearly refutes this allegation. Harper expressly acknowledged in the plea agreement that he had entered into the plea bargain "voluntarily." *See* Plea Agreement ¶ 13. At the plea hearing, Defendant further affirmed, under oath, that he had not been threatened, forced, or coerced into signing the plea agreement or pleading guilty. *See* Rearraignment at 9. The Court cannot lightly disregard Harper's sworn statements under questioning by the rearraigning District Judge. *See Blackledge*, 97 S.Ct. at 1629. Harper's contention thus fails.

Harper further argues that counsel should have never urged him "to agree to such a broad waiver." *See* Reply at 6. The attack by Defendant is baseless. Harper cannot establish "constitutionally inadequate representation just because the plea agreement contained a waiver." *See, e.g., United States v. Leyva*, 2002 WL 31056694, at *2 (N.D. Ill. Sept. 13, 2002). Here, the United States pledged to recommend credit for acceptance of responsibility and also to file a § 5K1.1 motion (for downward departure below the statutory minimum) if Harper provided substantial assistance. *See* Plea Agreement ¶¶ 5, 9. Harper thus obtained significant promises from the United

States in exchange for waiving his rights and pleading guilty. Though Harper ultimately did not receive the full benefits of his bargain, he has himself – not counsel – to blame.

Movant also asserts that counsel should have obtained an expert to testify at sentencing about the "content" of the recorded phone conversations. *See* Reply at 5. He alleges that expert testimony would have had a "direct and crucial impact on the length of sentence imposed," but Harper provides no specific analysis. *See id*. The speculative and conclusory assertion does not adequately establish prejudice. *See, e.g., Hall v. United States*, 2008 WL 867892, at *3 (Mar. 28, 2008 M.D. Tenn.)("[M]erely contending that trial counsel should have hired a handwriting expert, without any evidence that the expert would testify favorably to Petitioner, does not entitle Petitioner to relief under § 2255."). Absent prejudice, Harper has not even approached showing that counsel actually provided ineffective assistance. *See Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984)(requiring defendant to show that counsel's performance was deficient and prejudicial to establish ineffective assistance). Particularly given Movant's own inculpatory testimony, an expert would have had no evident effect in mitigation.

Finally, Harper asserts that he could not have validly pled guilty or accepted the plea agreement because he is "no more intelligent than a grade school child." *See* Reply at 3. The District Judge properly established Harper's competency during the plea hearing. *See* Rearraignment at 3-4, 15. Besides Harper's own lay assessment, nothing in the record contradicts the District Court's determination. Moreover, even if Harper's IQ is below average, federal courts do not strictly equate "low intelligence" with "mental incompetence." *See Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995)("[N]either low intelligence [or] mental deficiency . . . can be equated with mental incompetence."); *Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir. 1997)

(same), *cert. denied*, 119 S.Ct. 128 (1998); *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005)(same); *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996)(same); *Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir. 2003)(same), *cert. denied*, 123 S.Ct. 2626 (2003). Based on this record, Harper has not shown that his plea (or the included waiver) was invalid.[5]

Because the record establishes an "informed and voluntary" waiver, and because Harper's counter-arguments have no merit, the Court finds that waiver enforcement is proper. *See In re Acosta*, 480 F.3d. at 422. The final waiver issue is one of scope. Based on the provision's unconditional wording, the waiver theoretically would bar every claim alleged by Harper. Sixth Circuit authority, however, has shown that waiver provisions do not apply categorically. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006)("[S]ubject matter jurisdiction is not subject to waiver."); *In re Acosta*, 480 F.3d at 422 n.2 ("[C]laims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived . . . ."); *United States v. Caruthers*, 458 F.3d 459, 472 (6th Cir. 2006)("[A]n appellate waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded.").

Here, Harper alleges that he unknowingly and involuntarily pled guilty because 1) counsel improperly "assured" him that he would receive a ten year sentence or less and 2) counsel "coerced him into believing that he was guilty of conspiracy." *See* DE #72-2 at 7-8 (hereinafter "Supporting Memo"). The Court considers each argument substantively, but finds no basis for either claim.

---

[5] Harper also asserts that he "was never apprised of his rights under the *Booker* decision." *See* Reply at 5. He thus contends that he did not receive effective representation during sentencing. The District Judge, however, abided by *Booker*. *See* Sentencing at 54, 57, 60; *see also* Sentencing Memorandum at 6. Harper does not explain how counsel's representation could have been or was prejudicial.

The plea agreement did not guarantee a specific sentence, but explained that the statutory penalty was "not less than 10 years, not more than life." *See* Plea Agreement ¶ 4. At the plea hearing, the District Judge asked Harper: "Has anybody made any promises to you other than what's contained in the [plea agreement]?" Harper answered, "No." *See* Rearraignment at 9. In addition, at rearraignment, the District Judge explicitly advised Harper that she did not know what the sentence would be at that time, but warned Harper that he could not withdraw his plea if the sentence exceeded his expectations. Harper acknowledged that he understood. *See id.* at 11-12.

The properly conducted plea hearing eliminates any arguable prejudice from counsel's alleged misadvice. *See, e.g., Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990)("Doganiere suffered no prejudice from his attorney's prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court."), *cert. denied*, 111 S.Ct. 1398 (1991); *see also Foster v. United States*, 2007 WL 2891420, at *7 (S.D. Ohio Sept. 28, 2007). As such, counsel's putative assurances about Harper's sentence would not establish a Sixth Amendment violation and invalidate the guilty plea.

Additionally, Harper asserts plea invalidity because counsel "coerced him into believing that he was guilty of conspiracy." *See* Supporting Memo at 8. The Information alleges that Harper "did conspire with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." *See* DE #16. Harper essentially contends that he was purchasing meth primarily for personal use – not distribution. Elsewhere, Movant complains because the Government never arrested, prosecuted, or convicted any other conspirators. *See* Supporting Memo at 5, 8-11. The Court rejects both contentions.

13

First, the record plainly establishes extensive meth distribution by Harper in concert with others. According to Harper's own supporting memo, the drug ledgers show that he purchased over 700 grams of meth during a 150 day period, although Harper estimates that he personally used about 3 grams per day. *See id*. at 5; *Cf*. PSR ¶ 23. By Defendant's own calculation, he had approximately 300 grams "left to distribute." *See* Supporting Memo at 5. Thus, it appears the issue is not whether Harper distributed meth, but whether he distributed over 500 grams.

According to the plea agreement, the drug ledgers "noted over 500 grams of methamphetamine distributed for Graves by defendant." *See* Plea Agreement ¶ 3(b). Although the ledgers are not in the record, Defendant has not asserted that the ledgers would reflect a smaller distribution amount. Instead, Harper provides only inexact and uncorroborated calculations estimating and premised on his own drug use. Plainly, Harper's imprecise, after-the-fact calculations would not refute contemporaneously documented ledger entries.

Furthermore, Harper expressly admitted to the facts contained in the plea agreement and acknowledged that the United States could prove the facts beyond a reasonable doubt. *See id*. The factual statement specifically described a conspiracy to distribute over 500 grams of a mixture or substance containing meth. *See id*. The agreement jointly recommended 779.63 grams of meth as relevant conduct. *See id.* at ¶5. At the plea hearing, the District Judge thoroughly reviewed the factual statement. Harper assured the Court, under oath, that he had reviewed the statement "carefully" with counsel. *See* Rearraignment at 9-10. In addition, he specifically agreed that the facts were "true" and accurately reflected his conduct. Defendant again acknowledged that the United States could prove the facts contained in the plea agreement beyond a reasonable doubt. By signing the plea agreement, Harper also acknowledged that he had "adopted" the factual basis as his

"own statement." *See id.* at 10. Defendant verified that the plea agreement factual basis accurately reflected his conduct. *See id.* at 6-7.

Without question, the record confirms that Harper participated in a conspiracy to distribute over 500 grams of meth. The fact that the Government did not charge any other conspirator has no legal significance. *See United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986). Based on this record, Harper cannot validly argue that his guilty plea was involuntary, the Information was defective, or that counsel's performance was deficient or prejudicial because there was insufficient evidence of a conspiracy to distribute meth. Similarly, Harper cannot complain that counsel failed to contest the drug quantity or drug type. Instead, the record clearly establishes, *via* Movant's statements, each essential element.

Finally, Harper also asserts that law enforcement improperly obtained a confession by promising immunity. The record does not support Harper's contention. When Defendant accepted the plea agreement, he expressly acknowledged that the document was the "complete and only Plea Agreement" between the parties. *See* Plea Agreement ¶ 11. In addition, Harper confirmed that he had received no other "promises." *See id.* At the plea hearing, Defendant mentioned nothing about immunity. Instead, Harper advised the District Judge, under oath, that he had not received any promises besides those contained in the plea agreement. *See* Rearraignment at 9. Plainly, Defendant's conduct does not suggest that he anticipated immunity.[6]

---

[6]

Harper also asserts that he was under the influence of controlled substances when he provided his confession. The allegation – even if it were true – would not merit relief on this record. *See, e.g., United States v. Mullikin*, 2006 WL 1675185, at *9 (E.D. Ky. June 16, 2006)("A suspect's intoxication or mental impairment does not make a confession involuntary unless some level of police coercion is present."). The Supreme Court recognized in *Colorado v. Connelly*, 107 S.Ct. 515 (1986) that "coercive police activity is a necessary predicate" to involuntariness. *See id.* at 522. Thus, "a defendant's mental condition, by itself and apart from its relation to official coercion,"

15

Alternatively, the confession (although helpful) would not have been essential to prosecuting Harper. According to the plea agreement, the drug ledgers independently established that Harper distributed over 500 grams of meth. *See* Plea Agreement ¶ 3(b)(providing the "ledger[s] noted over 500 grams of methamphetamine distributed for Graves by defendant"). The ledgers also could not have been an impermissible fruit of the interrogation and confession. Rather, the plea agreement indicates that Defendant provided the ledgers to law enforcement months before his confession. *See id*. Thus, the claims relating to Harper's confession or alleged immunity fail.

The remaining claims assert "selective prosecution" and sentencing errors. Because these claims do not attack the Court's jurisdiction, implicate the validity of Harper's guilty plea, or allege a sentence in excess of the statutory maximum, the waiver provision clearly applies and bars review.[7]

\* \* \*

In sum, the Court rejects Harper's § 2255 motion. The Court finds that the collateral-attack waiver is valid, enforceable, and dispositive as to all claims within its ambit. For those claims not barred by the waiver provision, the Court finds that the claims do not have any legal merit or support. Those claims thus fail under applicable § 2255 standards. *See, e.g., Watson v. United*

---

cannot invalidate a confession as involuntary. *See id*. at 520. Here, Harper has not established coercive police activity relative to any confession.

[7]

The Court also notes that, to the extent the Sixth Circuit rejected Harper's arguments on appeal, relief via § 2255 is not available absent "exceptional circumstances, such as an intervening change in the law." *See Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999), *cert. denied*, 120 S.Ct. 335 (1999). Additionally, § 2255 is not a vehicle for asserting technical violations of the sentencing guidelines. *See Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996), *cert. denied*, 116 S.Ct. 1701 (1996).

*States*, 165 F.3d 486, 488 (6th Cir. 1999)(requiring a "substantial and injurious . . . influence on the proceedings" or a "fundamental defect which inherently results in a complete miscarriage of justice" to warrant relief under § 2255).

### III. Evidentiary Hearing

Harper requests an evidentiary hearing. On this record, the Court finds that such relief is unnecessary and unjustified. The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Here, the waiver provision applies. For claims not barred by the waiver, the Court has found that such claims have no support in law. *See Blanton*, 94 F.3d at 235. As such, the Court finds that this matter merits no additional evidentiary development by way of a hearing.

### IV. Certificate of Appealability

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability).

Because the waiver provision applies, and because those claims not barred by the waiver fail as a legal matter, Harper's petition does not meet the § 2253 threshold. The Court's determination,

as to both the waiver and the merits, is not debatable. Harper has not made a "substantial showing" concerning any claimed denial of right, as shown by clear precedent applied to the dispositive facts. Therefore, the Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal.

**V. Recommendation**

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Harper's § 2255 motion, *see* DE #72;

2) the District Court DENY as moot Harper's motion for a ruling in his favor, *see* DE #77; and

3) should Harper make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file specific written objections to any or all portions for consideration, de novo, by the District Court.

This the 8th day of September, 2008.

Signed By:
Robert E. Wier  REW
United States Magistrate Judge

G:\01-Clerk\2255\04-57 Harper Recommend II.wpd